**E-FILED**
Friday, 02 November, 2007  09:57:18 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RODNEY G. HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-3007 |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>OPINION</u>

CHARLES H. EVANS,  U.S. Magistrate Judge:

This matter comes before the Court for judicial review of the Defendant Commissioner of Social Security's denial of Plaintiff Rodney G. Hughes' application for Disability Insurance Benefits and Supplemental Security Income (collectively disability benefits) under Titles II and XVI of the Social Security Act.  42 U.S.C. §§ 416, 423, 1381a, and 1382c.  The parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this Court.  <u>Consent to Proceed Before a United States Magistrate Judge, and Order of Reference (d/e 16)</u>.  This Court has jurisdiction to hear this matter.  42 U.S.C. §§ 405(g), 1383(c).  As set forth

1

below, the Commissioner's decision is affirmed.

<u>STATEMENT OF FACTS</u>

Rodney G. Hughes was born on October 25, 1971. He has an eighth grade education. He has performed cleaning duties in an ice cream store, stocked shelves in a grocery store and a retail store, cleaned silk screens in a print shop, and worked as an assembler. In December 1990, Hughes was injured in an automobile accident. His L4 vertebra was fractured and his left eye socket was fractured. The eye socket had to be surgically reconstructed. He qualified for disability benefits beginning in January 1991, due to his injuries. His disability benefits were terminated in September 1997, because he was able to return to work.

Hughes again stopped working on August 23, 2002, after injuring his back when he attempted to move a heavy object at work. Hughes went to the emergency room in August 2002 after his injury. An X-ray of his lumbar spine revealed an old compression deformity of the L4 vertebra, but no acute abnormalities. <u>Record of Proceedings (d/e 12) (hereinafter R.)</u>, at 151. He did not return to work after the injury, and has not worked since.

Hughes filed his application for disability benefits on September 13, 2002. In October 2002, Hughes was examined by Dr. Vital Chapa at the

2

request of a state agency.  Hughes was able to walk without aids.  Dr. Chapa conducted motor, sensory, and reflex testing.  The tests revealed decreased right knee reflexes, but no other abnormalities.  Dr. Chapa found no atrophy.  Hughes had mild paravertebral muscle spasms and reduced lumbar range of motion.  R. 153-54.

A state medical consultant, Ronee Kennedy, then looked at Hughes' medical records and prepared a residual functional capacity assessment.  R. 156-163.[1]  Kennedy opined that Hughes could occasionally lift 50 pounds; frequently lift 20 pounds; and could stand, sit, or walk for six hours in an eight-hour work-day.  Kennedy concluded that Hughes could perform medium work. R. 163.

In March 2003, Hughes went to see an orthopedic surgeon, Per Freitag, M.D., because his back pain had worsened.  Dr. Freitag found that Hughes had minimal lumbar tenderness, a positive straight leg raising test on the right side, and normal reflexes and muscle strength.  Dr. Freitag referred Hughes to Capital Community Health Care (Capital) to secure ongoing treatment and imaging of his back.  Dr. Freitag also provided samples of Baxtra.  Dr. Freitag opined that surgery might be needed, but he

---

[1]The record does not indicate Kennedy's credentials.

would begin with conservative treatment.  R. 191-92.

Hughes went to Capital on March 27, 2003.  An MRI of Hughes' back was ordered.  The MRI showed moderate diffuse disc bulges at L3-4 and L4-5, a moderate diffuse disc bulge at L2-3, and moderate posterior osteophyte formation at L5-S1 with no evidence of severe spinal stenosis or disc herniation.  R. 198, 295-96.

In May 20, 2003, Hughes began physical therapy sessions.   The physical therapist's handwritten notes from the initial evaluation on May 20, 2003, state at one point, "Aug 2002 Not able to work stand/sit long time." R. 206.  Sessions were scheduled for May and June 2003.  Hughes came to two sessions and then stopped coming.  The Physical Therapy Discharge Summary indicates that Hughes stopped coming because his pain increased with the physical therapy.  R. 205.

In June 2003, Dr. Freitag administered a lumbar epidermal steroid injection to relieve the pain.  Hughes received some relief from the shot, but only for about two weeks.  Dr. Freitag saw Hughes again on July 15, 2003. Dr. Freitag's notes indicate that:  Hughes walked with a stooped posture and had increased pain with the straightening of his back; Hughes had 5/5 strength; his sensation was intact; and he had normal reflexes.  The Plan and

Assessment part of Dr. Freitag's notes state, in part, "This pain is keeping him from working and keeping him from being active, and we would therefore like to figure out what is going on, if possible." R. 229.  Dr. Freitag ordered a CT myelogram to try to determine the cause of the pain. R. 229.

Dr. Freitag met with Hughes again on October 7, 2003, to review the results of the myelogram.  The test showed mild retrolisthesis of L5 on S1 and L4 on L5.  No instability was found.  The test also showed bulging discs at L2-L3, L3-L4, and L4-L5 level.  R. 183, 286-87.  Dr. Freitag could not see any obvious severe spinal stenosis.  R. 183.  Dr. Freitag subsequently ordered an EMG nerve conduction study of the lower extremities.  The results were normal.  R. 164-82.

In November 2003, Hughes was seen at Capital.  He presented with back pain and depression, anhedonia, and feelings of guilt and hopelessness R. 274.  He was prescribed Wellbutrin and hydorcodone.  R. 273-75.

In April 2004, Hughes went to the emergency room complaining of pain in his elbow.  A week earlier, he fell off a mountain bike.  X-rays of the elbow revealed no fracture.  His arm was placed in a sling and he was given Tylenol 3.  R. 219-22.

5

In August 2004, Hughes was seen at Capital with complaints of back pain and headaches.  He was diagnosed with high blood pressure.  He was told to exercise, lose weight, and restrict his intake of salt.  R. 265-66.

On February 28, 2005, the Administrative Law Judge (ALJ) conducted an evidentiary hearing.  Hughes appeared in person and with his attorney.  Hughes and vocational expert Dr. James Lanier testified at the hearing.  Hughes testified that his main problems were back and neck pain, and headaches with migraines.  R. 395-96.  Hughes testified that he had pain in his back that went down into his legs, mainly the right leg.  When the pain went into his right leg, Hughes fell to the floor and could not get up for 10 to 15 minutes.  He testified that this happened 2 to 3 times a month.  R. 398.  He stated that he could not stand very long because of the pain.  He said that he lived with his mother, and she performed most of the work around the house.  He rarely went anywhere.  He spent most of his time lying down and watching television.  Hughes testified that he took care of own personal hygiene.  R. 398-400.

Hughes also stated that he had migraine headaches 5 to 6 times per month, with blurred vision sometimes.  R. 398.  He also said that he had double vision sometimes as a result of the injury to his eye in the 1990

automobile accident.  R. 402.

Hughes testified that has tried numerous pain medications, physical therapy, and injections.  He stopped physical therapy because it was too painful.  The medications dulled the pain somewhat, but did not relieve it. He said that no one offered him a surgical option.  He did not know why, but suspected that surgery was not recommended because of the cost.  R. 397-98, 400–02.

Dr. Lanier then testified.  The ALJ asked Dr. Lanier the following hypothetical question,

> I ask you to assume an individual born in 1971, with an eighth grade education and past work such as the claimant's.  Assume further the individual is limited to light work and that he could not be expected to be able to lift more than ten pounds frequently or twenty pounds occasionally, with no climbing of ladders, ropes, or scaffolds.   Only occasional stooping, crouching, or crawling.  Let us go with that.  Would such an individual be able to perform his past work?

R. 404.  Dr. Lanier answered, "No."  R. 404.  Dr. Lanier then testified that the person described in the hypothetical question could perform numerous other jobs.  Dr. Lanier gave examples of food prep worker, dishwasher, and janitor-cleaner.  R. 404.

The ALJ then modified his hypothetical question, "Okay.   If the

7

individual were unable to stand or walk for prolonged periods of time or to do so frequently, that would rule out these jobs right?"  R. 405.  Dr. Lanier agreed.  The ALJ then asked, "Are there jobs that such an individual could do though?"  R. 405.  Dr. Lanier said, "Ticket checker, sedentary, 3,025. Interviewer, sedentary, 1,378.   Receptionist, an information clerk, sedentary, 4,436."  R. 405.  The ALJ then asked, "If the individual were limited to simple repetitive tasks, would that change you answer to either question?"  Dr. Lanier replied, "No."  R. 405.  Dr. Lanier then confirmed that the numbers  he gave were the numbers of those jobs that exist in Illinois.  R. 405.

After the hearing, the ALJ sent Hughes for a mental status assessment and a neurological consultative examination.   On April 18, 2005, psychologist Stephen G. Vincent, PhD., performed the mental status assessment of Hughes.   Dr. Vincent diagnosed Hughes with major depression.  Dr. Vincent opined the Hughes had moderate limitations in his ability to: (1) understand short, simple instructions; (2) carry out short, simple instructions; (3) understand and remember detailed instructions; (4) carry out detailed instructions; (5) make judgments on simple work-related decisions; (6) interact appropriately with the public, supervisors, and co-

8

workers; (7) respond appropriately to work pressures; and (8) respond appropriately to changes in a routine work setting.  R. 304-07.

On April 21, 2005, neurologist Joshua D. Warach, M.D., performed a neurologic consultative examination.  Dr. Warach found trace reflexes in the ankles bilaterally, but other reflexes were normal.  Hughes' lumbar spine was tender and straight leg raising testing was positive on the right.  Motor testing was normal with no evidence of atrophy.  Dr. Warach found no objective evidence of any exertional limitations, but qualified this opinion by noting Hughes' subjective claims of back pain indicate that he should avoid heavy lifting or prolonged standing or sitting. R. 313-15.  Dr. Warach also noted some visual limitations based on Hughes' statement that Hughes had a history of intermittent double vision.  Dr. Warach also opined that Hughes should avoid hazards and avoid dangerous situations.  R. 316.

Hughes returned to physical therapy in April and May 2005.  The notes from the initial evaluation indicate inconsistent findings.  Repeated movements caused no symptoms.  Hughes' lower abdominal muscles were weak, but his leg strength was good, and his range of motion was good.  The physical therapists started Hughes on exercises designed to strengthen his abdominal muscles and reduce pain.  R. 332.  The notes from the April 18,

9

2005, visit indicate that Hughes stated that biking did not bother him. R. 326.  The therapy sessions ended on May 10, 2005.   The notes indicate that stability exercises seemed to provide some benefit.  R. 325.

## THE ALJ'S DECISION

The ALJ issued his decision on November 25, 2005. R. 12-18.  The ALJ followed the five-step analysis set forth in the Social Security Administration regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920.  Step 1 requires that the claimant not be currently engaged in gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment.   20 C.F.R. §§ 404.1520(c), 416.920(c).   If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Such severe impairments are set forth in the Listings.  20 C.F.R. Part 404 Subpart P, Appendix 1.  The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to his prior work

considering his RFC.   20 C.F.R. §§ 404.1520(e), 416.920(e).   If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps.  The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ determined that Hughes met his burden at Steps 1 and 2 of the Analysis.  He had not worked since August 2002, and he has a severe impairment due to his back pain and his depression.  R. 13-14.  At Step 3 of the Analysis, the ALJ determined that the medical evidence regarding Hughes' impairments did not meet any of the Listings that would require finding that he was disabled without regard to his age, education, and work experience.  The ALJ found that Hughes' claim of the existence of his back pain was credible, but his claims regarding the extent and severity of the pain was exaggerated and not credible.  R. 14-15.

The  ALJ  then went on to Step 4 to determine whether Hughes could

perform his prior work. R. 16. The ALJ found that Hughes had the RFC to lift and carry 20 pounds occasionally or 10 pounds frequently, with no prolonged or frequent standing or walking, no climbing of ladders or ropes or scaffolds, only occasional stooping or crouching or crawling, and only simple repetitive tasks. R. 17. The ALJ included the limitation to simple repetitive tasks because he found that Hughes had "moderate restrictions on his ability to concentrate and attend." R. 16. Based on these limitations, the ALJ found that Hughes met his burden at Step 4 to show that he could not return to his prior work.

The ALJ then determined at Step 5 that the Commissioner met his burden to show that Hughes could perform a significant number of jobs in the national economy. The ALJ noted first that under the Commissioner's regulations, Hughes' exertional limitations, alone, would not render him disabled, given his age, education, and work experience. The ALJ then looked to Dr. Lanier's testimony that a person of Hughes' age with his RFC, education, and work experience could perform 3,025 ticket checker positions, 1,378 interviewer positions, and 4,436 receptionist/information clerk positions that exist in Illinois. R. 16. Based on this evidence, the ALJ found that, even with the additional non-

12

exertional limitation of performing only simple repetitive tasks, Hughes could perform a significant number of jobs in the national economy. The ALJ, thus, found that the Commissioner met his burden at Step 5 and concluded that Hughes was not disabled. Hughes now appeals. R. 16-17.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's decision is supported by substantial evidence. The ALJ determined that Hughes had a severe impairment because of his depression and back pain, but the impairment was not severe enough to meet a Listing,

13

which is necessary to be found disabled at Step 3. The medical evidence supports a finding that Hughes had a back injury that caused significant pain. He also was depressed. The evidence, however, supports the ALJ's conclusion that his condition did not reach the level of any Listing.

The ALJ's analysis at Step 4 is also supported by substantial evidence. The ALJ found that Hughes could lift and carry 20 pounds occasionally or 10 pounds frequently, with no prolonged or frequent standing or walking, no climbing of ladders or ropes or scaffolds, only occasional stooping or crouching or crawling, and only simple repetitive tasks. The exertional limitations are supported by Dr. Warach's opinions, subject to Dr. Warach's notes that Hughes' subjective claims of pain may indicate more limited abilities. The ALJ made a credibility determination that Hughes' subjective complaints of the severity of his pain were not credible. That credibility determination is supported by substantial evidence. Hughes' apparent bike riding, as demonstrated by the accident in 2004 and the physical therapy note in 2005, calls into question his testimony that the pain is so debilitating that he must lie down all the time. The ALJ also had the opportunity to observe Hughes and evaluate his veracity. The Court therefore will not revisit the ALJ's credibility determination.

14

The non-exertional limitation found by the ALJ is also supported by substantial evidence.  Dr. Vincent found that Hughes had moderate limitations in his ability to: (1) understand short, simple instructions; (2) carry out short, simple instructions; (3) understand and remember detailed instructions; (4) carry out detailed instructions; (5) make judgments on simple work-related decisions; (6) interact appropriately with the public, supervisors, and co-workers; (7) respond appropriately to work pressures; and (8) respond appropriately to changes in a routine work setting.  R. 304-07.  The ALJ  minimally articulated his analysis of this evidence when he explained that Hughes' RFC was limited to simple repetitive tasks because Hughes had moderate limitations in his ability to concentrate and attend. R. 16.  The ALJ, thus, considered the limitations set forth by Dr. Vincent and accounted for that evidence in the non-exertional limitations in Hughes' RFC.  The RFC finding, therefore, was supported by substantial evidence. The ALJ then concluded that Hughes could not perform his prior work given his RFC.  Dr. Lanier's opinion supports this finding.

Dr. Lanier's opinion also supports the finding that Hughes could perform a significant number of jobs in the national economy.  Dr. Lanier identified several thousand jobs that exist in Illinois that Hughes could

perform.  The ALJ's conclusion that the Commissioner met his burden at Step 5 is, thus, supported by substantial evidence.  The decision of the ALJ, therefore, must be affirmed.

Hughes argues that the ALJ erred because Hughes claims that his condition meets the requirements of Listing 1.04 for disorders of the spine. Hughes is incorrect.  Listing 1.04 requires one of the following: (1) nerve root compression; (2) spinal arachnoiditis; or (3) lumbar spinal stenosis resulting in pseudoclaudication. 20 C.F.R. Pt. 404, Subt. P, App. 1 § 1.04. None of the medical evidence indicates that Hughes has any of these conditions.

Hughes also argues that the ALJ erred at Step 3 of the Analysis because Hughes' treating physician opined that Hughes was disabled due to back pain, and that opinion must be given controlling weight.  Hughes argues that his treating physicians' opinions regarding the severity of his pain showed that his condition was medically equivalent to Listing 1.04. The Court disagrees.  The opinion of a treating physician is to be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record.  20 C.F.R. § 416.927(d)(2);

SSR 96-2p.  The opinions relied on by Hughes are: (1) a statement by a physical therapist in an initial evaluation note that Hughes was not able to work due to pain; and (2) a statement by Dr. Freitag, quoted above, that "This pain is keeping him from working and keeping him from being active, and we would therefore like to figure out what is going on, if possible."  The physical therapist is not a treating physician, and is not an acceptable medical source, and so, the ALJ is not required to give that opinion any weight.  20 C.F.R. § 404.1513(a).  Dr. Freitag's statement was not an opinion based on medical evidence.  Rather, Dr. Freitag stated that he did not know what was causing the subjective level of pain.  The ALJ could properly consider that Dr. Freitag's statement was a recitation of Hughes' description of his own condition, rather than a medical opinion.  Such statements are not entitled to any special weight.  See Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004).[2]

Hughes also argues that the ALJ's decision was against the manifest

---

[2]Hughes also criticizes the ALJ for discounting the opinions of the state agency consulting physicians, presumably Dr. Chapa and Kennedy.  The ALJ, however, found that Hughes' impairments were more severe than these doctors opined.  In particular, Kennedy opined that Hughes could perform medium work.  Discounting these opinions in light of the rest of the evidence was not error, and was not prejudicial to Hughes in any event.

weight of the evidence.  He argues that the medical evidence showed severe pain.  The Court disagrees.  The medical evidence shows a back injury, but did not demonstrate the extent or severity of Hughes' pain.  Dr. Freitag, as quoted above, did not know where the pain was coming from, even with test results.  The evidence supports the ALJ's conclusion that Hughes had a back injury, but the objective medical evidence did not demonstrate that the injury was debilitating.  The level of disability, rather, was dependant on Hughes' subjective level of pain.  The ALJ made a credibility determination on the issue of Hughes' testimony regarding his pain.  This  Court will not second guess that finding.  The decision was not against the manifest weight of the evidence.

Hughes next argues that the ALJ's decision was not supported by substantial evidence.  The Court disagrees.  The objective medical evidence supported the ALJ's findings that Hughes had back problems, but did not demonstrate significant exertional limitations apart from Hughes' subjective level of pain.  The ALJ's credibility determination of Hughes' level of pain, as explained above, is supported by substantial evidence and will not be revisited.  Dr. Vincent's findings of moderate limitations in various areas supported  the  ALJ's  determination  that  Hughes  had  non-exertional

limitations that limited him to simple repetitive tasks.  The decision was supported by substantial evidence.

Last, Hughes argues that the ALJ's hypothetical questions to Dr. Lanier did not comport with the evidence.  As a result, Hughes argues that Dr. Lanier's opinions did not support the ALJ's decisions at Steps 4 and 5 of the Analysis.  Again, the Court disagrees.  The hypothetical questions, quoted above, comported with the ALJ's findings regarding Hughes' RFC. As explained above, those findings were supported by substantial evidence. Hughes complains that the hypothetical questions did not take into account all of the moderate limitations found by Dr. Vincent.  The ALJ explained in his decision, though, that he took into account Hughes' moderate limitations by limiting his RFC to simple, repetitive tasks.  The Court can track the ALJ's analysis, and so, finds that there was no error.

THEREFORE, the Commissioner's Motion for Summary Affirmance (d/e 17) is ALLOWED, and the Plaintiff's Motion for Summary Judgment (d/e 14) is DENIED.  The decision of the Commissioner is affirmed.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:  November 1,  2007.

FOR THE COURT:

s/Charles H. Evans
CHARLES H. EVANS
UNITED STATES MAGISTRATE JUDGE